UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>(1) ALI JAAFAR,<br>(2) MOHAMED JAAFAR,<br>(3) YOUSEF JAAFAR,<br><br>              Defendants | Criminal No.  21cr10248<br><br>Violations:<br><br><u>Count One</u>: Conspiracy to Defraud the United States<br>(18 U.S.C. § 371)<br><br><u>Count Two</u>: Money Laundering Conspiracy<br>(18 U.S.C. § 1956(h))<br><br><u>Counts Three-Fifteen</u>: Filing False Tax Returns<br>(26 U.S.C. § 7206(1))<br><br><u>Forfeiture Allegation</u>:<br>(18 U.S.C. § 982(a)(1)) |

INDICTMENT

At all times relevant to this Indictment:

General Allegations

1. Defendant ALI JAAFAR was an individual residing in Watertown, Massachusetts.

2. Defendant MOHAMED JAAFAR was an individual residing in Watertown and Waltham, Massachusetts.

3. Defendant YOUSEF JAAFAR was an individual residing in Watertown, Massachusetts.

4. Co-conspirator 1 ("CC-1") was an individual residing in Cranston, Rhode Island.

5. Co-conspirator 2 ("CC-2") was an individual residing in Watertown, Massachusetts.

6.      The Massachusetts State Lottery Commission (the "Lottery Commission") was established by the Massachusetts legislature to administer the state lottery. Proceeds from the lottery are allocated to cities and towns in the Commonwealth of Massachusetts.

### Federal Tax Requirements

7.      Pursuant to the Internal Revenue Code and attendant regulations, individual taxpayers generally are required to report their income, attendant tax obligations, and, where appropriate, any claim for a refund on a U.S. Individual Income Tax Return, Form 1040, which must be filed annually with the Internal Revenue Service (the "IRS").

8.      Gambling income is fully taxable and must be reported to the IRS. Gambling income may include, but is not limited to, winnings from state lotteries.

9.      Gambling losses may not be used to offset gambling income from sources other than a taxpayer's own gambling activity.

10.     Lotteries, sweepstakes, race-track, and other gambling operators are required to report to the IRS on a Form W-2G each transaction in which net winnings exceed $600 and are at least 300 times the amount of the wager. The Form W-2G reports to the IRS the winner's name, address, and taxpayer identification number, as well as the amount of the gambling income and any taxes withheld.

### Massachusetts Lottery Requirements

11.     Massachusetts General Law Chapter 10, Section 29 prohibits the sale of lottery tickets or shares by anyone other than a licensed lottery agent and provides that violations are punishable by a fine. MGL 30 § 29.

12. The Lottery Commission requires winners to declare on a claim form, under penalty of perjury, that the name, address, and taxpayer identification number listed on the Form W-2G are correct, and that the signatory is "the sole recipient of this payment; and that [the signatory is] not claiming th[e] prize to assist another in the avoidance of financial obligations."

13. The Lottery Commission submits the information obtained on the W-2Gs from lottery ticket cashers to the IRS by electronic wire transmission from Massachusetts to the IRS at locations outside of Massachusetts.

14. "Ten-percenting" is a practice by which lottery winners seek to evade these IRS reporting requirements and avoid payment of the applicable taxes by having another individual cash the winning ticket(s) on their behalf, under the other individual's name. In exchange, the individual who cashes the winning ticket(s) and completes the Form W-2G retains a percentage of the winnings, sometimes as high as 10 or 20 percent of the proceeds.

Exceptional Number of Winning Massachusetts Lottery<br>Tickets Cashed by the Defendants

15. Between 2011 and 2019, ALI JAAFAR, YOUSEF JAAFAR, and MOHAMED JAAFAR (collectively referred to herein as the "Defendants") cashed more than 13,000 lottery tickets and claimed more than $20,989,284 in Massachusetts lottery winnings as follows:

| Name | Years | No. of Tickets More Than $600.00 | Total Winnings |
|---|---|---|---|
| Ali Jaafar | 2011-2019 | More than 10,000 | $15,150,612 |
| Mohamed Jaafar | 2012-2019 | 2,400 | $3,349,368 |
| Yousef Jaafar | 2013-2019 | 1,360 | $2,489,304 |
| | | Total | $20,989,284 |

16.   In 2019, ALI JAAFAR was the top individual lottery ticket casher for the state. MOHAMED JAAFAR was the 3rd highest individual ticket casher, and YOUSEF JAAFAR was the 4th highest individual ticket casher.

<u>CLAIMS BY ALI, MOHAMED, AND YOUSEF JAAFAR<br>DURING THE COVID-19 PANDEMIC</u>

17.   In order to comply with the Commonwealth of Massachusetts guidance and regulations regarding the COVID-19 pandemic, the Lottery Commission closed its claim centers to the public on March 23, 2020. Instead, lottery winners with prizes up to and including $50,000.00 were able to submit their claims by mail. If an individual had a prize claim of $10,000.00 or more, the individual could also call a grand prize coordinator at the Lottery Commission office and schedule an appointment to have the claim processed in person.

18.   Between on or about March 23, 2020 and on or about June 12, 2020, the Defendants together claimed approximately $360,807.00 in Massachusetts lottery winnings by submitting the claims through the mail as set forth below:

| NAME | NO. TICKETS | TOTAL WINNINGS |
|---|---|---|
| Ali Jaafar | 190 | $ 225,456.00 |
| Mohamed Jaafar | 12 | $ 60,727.50 |
| Yousef Jaafar | 13 | $ 74,623.50 |
| | Total | $ 360,807.00 |

19.   In addition, during the same time period, both ALI JAAFAR and YOUSEF JAAFAR set up appointments in order to have their claims processed in person for prizes greater than $10,000.00 as set forth below:

| NAME | APPOINTMENT DATE | NO. TICKETS | TOTAL WINNINGS |
|---|---|---|---|
| Ali Jaafar | 06/01/2020 | 1 | $10,000.00 |
| Yousef Jaafar | 06/02/2020 | 1 | $12,020.00 |
| Ali Jaafar | 06/12/2020 | 1 | $20,000.00 |

### The Tax Fraud and Money Laundering Conspiracies

20. From at least 2011 through at least June 2020, the Defendants conspired with others known and unknown to the grand jury to carry out a scheme to defraud the United States of federal income taxes on Massachusetts state lottery winnings.

21. From at least 2011 through at least June 2020, the Defendants conspired with others known and unknown to the grand jury to launder the funds from Massachusetts state lottery winnings of others.

### Object of the Tax Fraud and Money Laundering Conspiracies

22. The object of the conspiracies was to profit by avoiding the payment of federal income taxes and other financial obligations and improperly claiming tax refunds by purchasing winning lottery tickets from the ticket holders at a discount, redeeming them with the Lottery Commission, receiving the proceeds, and offsetting the reported winnings with falsely claimed gambling losses.

### Manner and Means of the Conspiracies

23. Among the manner and means by which the Defendants and co-conspirators known and unknown to the grand jury carried out the conspiracies were the following:

   a. Having lottery agents and convenience store staff purchase winning lottery tickets from the ticket holders for cash at a discounted price;

   b. Providing purchased tickets to the Defendants who either directly or indirectly redeemed the tickets at the Lottery Commission;

5

   c.  Presenting the Lottery Commission with false claim forms in which they declared, under the pains and penalties of perjury, that the winnings were their own;

   d.  Cashing the checks provided by the Lottery Commission for the winning tickets;

   e.  Reimbursing the lottery agents for the lesser amounts they paid the actual ticket holders; and

   f.  Falsely reporting the lottery income on the Defendants' tax returns as the proceeds of personal gambling activity, and offsetting that income with purported equivalent gambling losses.

Overt Acts and Acts in Furtherance

24. In furtherance of the conspiracies and to affect their aims, the Defendants and others known and unknown to the grand jury committed or caused to be committed the following overt acts, among others, in the District of Massachusetts:

25. On or about April 29, 2016, ALI JAAFAR cashed a $20,000 Massachusetts state lottery ticket that he had purchased from a convenience store owner for cash at a discounted price. In order to cash this winning ticket, ALI JAAFAR signed a Lottery Commission claim form in which he falsely declared, under the pains and penalties of perjury, that he was the "sole recipient" of the winning lottery payment and that he was "not claiming [the] prize to assist another in the avoidance of financial obligations."

26. On or about March 23, 2018, ALI JAAFAR cashed a winning $1,000 Massachusetts state lottery ticket that a convenience store owner had purchased for cash at a discounted price. In order to cash the winning ticket the co-conspirator had purchased, ALI

JAAFAR signed a Lottery Commission claim form in which he falsely declared, under the pains and penalties of perjury, that he was the "sole recipient" of the winning lottery payment and that he was "not claiming [the] prize to assist another in the avoidance of financial obligations."

27. On or about July 22, 2019, ALI JAAFAR cashed 10 winning lottery tickets and, for each of these winning tickets, signed Lottery Commission claim forms in which he falsely declared, under the pains and penalties of perjury, that he was the "sole recipient" of the winning lottery payment and that he was not "not claiming [the] prize to assist another in the avoidance of financial obligations."

28. On or about July 22, 2019, MOHAMED JAAFAR cashed 9 winning lottery tickets, and for each of these winning tickets, he signed Lottery Commission claim forms in which he falsely declared, under the pains and penalties of perjury, that he was the "sole recipient" of the winning lottery payment and that he was "not claiming [the] prize to assist another in the avoidance of financial obligations."

29. On or about July 22, 2019, YOUSEF JAAFAR cashed 6 winning lottery tickets and for each of these winning tickets, he signed Lottery Commission claim forms in which he falsely declared, under the pains and penalties of perjury, that he was the "sole recipient" of the winning lottery payment and that he was "not claiming [the] prize to assist another in the avoidance of financial obligations."

30. On or about October 17, 2019, a staff person at a Somerville, Massachusetts convenience store purchased a $1,000 winning lottery ticket at a discount. Over the next several hours, MOHAMED JAAFAR called a phone number registered to the owner of that Somerville convenience store six times.

31.     On or about October 18, 2019, acting at the direction of YOUSEFF JAAFAR, CC-1 cashed the $1,000 lottery ticket that had been purchased at a discount the day before at the Somerville convenience store. In order to cash this winning ticket, CC-1 signed a Lottery Commission claim form in which he falsely declared, under the pains and penalties of perjury, that he was the "sole recipient" of the winning lottery payment and that he was "not claiming [the] prize to assist another in the avoidance of financial obligations."

32.     On or about May 4, 2020, ALI JAAFAR signed and submitted a Lottery Commission claim form for a Massachusetts lottery ticket that he purchased at a discount from a convenience store representative. In this claim form, ALI JAAFAR falsely declared, under the pains and penalties of perjury, that he was the "sole recipient" of the winning lottery payment and that he was "not claiming [the] prize to assist another in the avoidance of financial obligations."

33.     On or about June 1, 2020 ALI JAAFAR went to the Lottery Commission office in Woburn to cash a claim for a $10,000.00 that he purchased at a discount from a co-conspirator. In this claim form, ALI JAAFAR falsely declared, under the pains and penalties of perjury, that he was the "sole recipient" of the winning lottery payment and that he was "not claiming [the] prize to assist another in the avoidance of financial obligations."

34.     On or about February 20, 2020, YOUSEF JAAFAR provided nine winning lottery tickets totaling $9,900 as well as completed claim forms for those lottery tickets to CC-2, who cashed those tickets at the Massachusetts Lottery Office in Woburn, Massachusetts. In this claim form, CC-2 falsely declared, under the pains and penalties of perjury, that he was the "sole

recipient" of the winning lottery payment and that he was "not claiming [the] prize to assist another in the avoidance of financial obligations."

35. On or about February 20, 2020, YOUSEF JAAFAR and CC-2 cashed the lottery checks for the nine tickets provided by the Massachusetts Lottery to this co-conspirator at the People's United Bank, which is a financial institution within the meaning of 18 U.S.C. § 20.

### ALI JAAFAR's False Tax Returns

36. From at least in or about January 2011 through 2019, ALI JAAFAR cashed more than $15 million in claimed winning Massachusetts state lottery tickets worth $600 or more each that had been acquired for cash at a discount from the actual ticket holders.

37. In each of those tax years, however, ALI JAAFAR falsely reported the income from cashing the winning tickets of others as his own gambling winnings and claimed an offset to virtually all his gambling winnings with alleged gambling losses. As a result, ALI JAAFAR paid less than $24,500 in federal taxes on these winnings and received a total of approximately $886,261.00 in tax refunds for tax years 2011-2019.

38. For example, on or about January 30, 2020, ALI JAAFAR signed and caused to be submitted to the IRS a U.S. Individual Tax Return for calendar year 2019 in which he improperly claimed a tax refund by reporting as gambling winnings money he had received by cashing lottery tickets of other individuals, while offsetting that income by also reporting purported gambling losses.

### MOHAMED JAAFAR's False Tax Returns

39. From at least in or about January 2012 through 2019, MOHAMED JAAFAR cashed more than $3.3 million in claimed winning Massachusetts state lottery tickets worth more than $600 that had been acquired for cash at a discount from the actual ticket holders.

40. In each of those tax years, however, MOHAMED JAAFAR falsely reported the income from cashing the winning tickets of others as his own gambling winnings and claimed an offset to virtually all his gambling winnings with alleged gambling losses. As a result, MOHAMED JAAFAR paid less than $21,700 in federal taxes on these winnings and received a total of approximately $106,032.00 in tax refunds for tax years 2012-2019.

41. For example, on or about March 19, 2020, MOHAMED JAAFAR submitted a U.S. Individual Tax Return for calendar year 2019 in which he improperly claimed a tax refund by reporting as gambling winnings money he had received by cashing lottery tickets of other individuals, while offsetting that income by also reporting purported gambling losses.

### YOUSEF JAAFAR's False Tax Returns

42. From at least in or about January 2013 through 2019, YOUSEF JAAFAR cashed more than $2.4 million in claimed winning Massachusetts state lottery tickets worth more than $600 that had been acquired for cash at a discount from the actual ticket holders.

43. In each of those tax years, however, YOUSEF JAAFAR falsely reported the income from cashing the winning tickets of others as his own gambling winnings and claimed an offset to virtually all his gambling winnings with alleged gambling losses. As a result, YOUSEF JAAFAR paid less than $10,700 in federal taxes on these winnings and received a total of approximately $185,951 in tax refunds for tax years 2013-2019.

44. For example, on or about February 13, 2019, YOUSEF JAAFAR submitted a U.S. Individual Tax Return for calendar year 2019 in which he improperly claimed a tax refund by reporting as gambling winnings money he had received by cashing lottery tickets of other individuals, while offsetting that income by also reporting purported gambling losses.

# COUNT ONE
## Conspiracy to Defraud the United States
### (18 U.S.C. §371)

The Grand Jury charges:

45. The Grand Jury re-alleges and incorporates by reference paragraphs 1-44 of this Indictment.

46. From at least in or about 2011 through June 2020, in the District of Massachusetts and elsewhere, the defendants,

> (1) ALI JAAFAR,
> (2) MOHAMED JAAFAR, and
> (3) YOUSEF JAAFAR,

conspired with others known and unknown to the Grand Jury to defraud the United States for the purpose of impeding, impairing, obstructing, and defeating the lawful government functions of the Internal Revenue Service in the ascertainment, computation, assessment, and collection of the revenue, to wit, federal income taxes.

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO
## Money Laundering Conspiracy
## (18 U.S.C. § 1956(h))

The Grand Jury charges:

47. The Grand Jury re-alleges and incorporates by reference paragraphs 1-44, 50, 52 and 54 of this Indictment.

48. From in or about 2011 through in or about June 2020, in the District of Massachusetts and elsewhere, the defendants,

    (1) ALI JAAFAR,
    (2) MOHAMED JAAFAR, and
    (3) YOUSEF JAAFAR,

conspired with each other and with others known and unknown to the Grand Jury to:

(a) conduct and attempt to conduct financial transactions, to wit, the deposit and cashing of checks from the Massachusetts Lottery, knowing that the property involved in such transactions represented the proceeds of some form of unlawful activity, and which in fact involved the proceeds of specified unlawful activity, that is, mail and wire fraud, in violation of Title 18, United States Code, Sections 1341 and 1343, with the intent to promote the carrying on of the specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i);

(b) conduct and attempt to conduct financial transactions, to wit, the deposit and cashing of checks from the Massachusetts Lottery Commission, knowing that the property involved in such transactions represented the proceeds of some form of unlawful activity, and which in fact involved the proceeds of specified unlawful activity, that is, the illegal sale of lottery tickets in violation of Massachusetts General Laws Chapter

13

10, Section 10, with the intent to engage in conduct constituting a violation of Title 26, United States Code, Sections 7201 and 7206, that is, the filing of false tax returns and aiding in the filing of false tax returns, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(ii).

All in violation of Title 18, United States Code, Section 1956(h).

## COUNTS THREE-SEVEN
Filing False Tax Returns – ALI JAAFAR
(26 U.S.C. § 7206(1))

The Grand Jury further charges:

49. The Grand Jury re-alleges and incorporates by reference paragraphs 1-44 of this Indictment.

50. On or about the dates set forth below, in the District of Massachusetts and elsewhere, the defendant,

(1) ALI JAAFAR,

did willfully make and subscribe a U.S. Individual Tax Return, Form 1040, and Other Income Type and Other Miscellaneous Deductions Statements attachment thereto, for the tax years set forth below, which returns were verified by written declaration that they were made under the penalties of perjury, and which were filed with the Director, Internal Revenue Service, and which returns and attachments thereto the defendant did not believe to be true and correct as to every material matter, in that the defendant knowingly and falsely claimed the amounts listed below as his and his spouse's own gambling winnings, and improperly offset that income by claiming other purported gambling losses, as listed below:

| Count | On or About Filing Date | Tax Year | False Amount Claimed in Gambling Winnings | Schedule A: Purported Amount Claimed in Gambling Losses |
|---|---|---|---|---|
| 3 | 1/22/2016 | 2015 | $1,616,911 | $1,590,000 |
| 4 | 2/2/2017 | 2016 | $2,037,358 | $2,012,358 |
| 5 | 1/27/2018 | 2017 | $2,257,461 | $2,217,461 |
| 6 | 1/24/2019 | 2018 | $2,224,702 | $2,224,702 |
| 7 | 1/30/2020 | 2019 | $1,833,143 | $1,793,142 |

All in violation of Title 26, United States Code, Section 7206(1).

## COUNTS EIGHT-TWELVE
Filing False Tax Returns – MOHAMED JAAFAR
(26 U.S.C. § 7206(1))

The Grand Jury further charges:

51. The Grand Jury re-alleges and incorporates by reference paragraphs 1-44 of this Indictment.

52. On or about the dates set forth below, in the District of Massachusetts and elsewhere, the defendant,

(2) MOHAMED JAAFAR,

did willfully make and subscribe a U.S. Individual Tax Return, Form 1040, and Other Income Type and Other Miscellaneous Deductions Statements attachment thereto, for the tax years set forth below, which returns were verified by written declaration that they were made under the penalties of perjury, and which were filed with the Director, Internal Revenue Service, and which returns and attachments thereto the defendant did not believe to be true and correct as to every material matter, in that the defendant knowingly and falsely claimed the amounts listed below as his and his spouse's own gambling winnings, and improperly offset that income by claiming other purported gambling losses, as listed below:

| Count | On or About Filing Date | Tax Year | False Amount Claimed in Gambling Winnings | Schedule A: Purported Amount Claimed in Gambling Losses |
|---|---|---|---|---|
| 8 | 1/28/2016 | 2015 | $402,140 | $401,140 |
| 9 | 2/3/2017 | 2016 | $545,095 | $545,095 |
| 10 | 1/29/2018 | 2017 | $666,110 | $666,110 |
| 11 | 2/6/2019 | 2018 | $663,172 | $663,172 |
| 12 | 2/2/2020 | 2019 | $731,338 | $731,338 |

All in violation of Title 26, United States Code, Section 7206(1).

<u>COUNTS THIRTEEN-FIFTEEN</u>
Filing False Tax Returns – YOUSEF JAAFAR
(26 U.S.C. § 7206(1))

The Grand Jury further charges:

53. The Grand Jury re-alleges and incorporates by reference paragraphs 1-44 of this Indictment.

54. On or about the dates set forth below, in the District of Massachusetts and elsewhere, the defendant,

(3) YOUSEF JAAFAR,

did willfully make and subscribe a U.S. Individual Tax Return, Form 1040, and Other Income Type and Other Miscellaneous Deductions Statements attachment thereto, for the tax years set forth below, which returns were verified by written declaration that they were made under the penalties of perjury, and which were filed with the Director, Internal Revenue Service, and which returns and attachments thereto the defendant did not believe to be true and correct as to every material matter, in that the defendant knowingly and falsely claimed the amounts listed below as his and his spouse's own gambling winnings, and improperly offset that income by claiming other purported gambling losses, as listed below:

| Count | On or About Filing Date | Tax Year | False Amount Claimed in Gambling Winnings | Schedule A: Purported Amount Claimed in Gambling Losses |
|---|---|---|---|---|
| 13 | 1/28/2016 | 2015 | $293,193 | $293,193 |
| 14 | 2/1/2018 | 2017 | $84,478 | $84,478 |
| 15 | 2/13/2019 | 2018 | $934,999 | $934,999 |

All in violation of Title 26, United States Code, Section 7206(1).

## MONEY LAUNDERING FORFEITURE ALLEGATION
(18 U.S.C. § 982(a)(1))

The Grand Jury further finds:

55. Upon conviction of the offense in violation of Title 18, United States Code, Section 1956, set forth in Count Two, the defendants,

   (1) ALI JAAFAR,
   (2) MOHAMED JAAFAR, and
   (3) YOUSEF JAAFAR,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in such offense, and any property traceable to such property. The property to be forfeited includes, but is not limited to, the following:

  a. Approximately $88,365 in Massachusetts Lottery scratch tickets, Keno and Number game tickets seized on September 9, 2020.

56. If any of the property described in Paragraph 55, above, as being forfeitable pursuant to Title 18, United States Code, Section 982(a)(1), as a result of any act or omission of the defendants --

  a. cannot be located upon the exercise of due diligence;

  b. has been transferred or sold to, or deposited with, a third party;

  c. has been placed beyond the jurisdiction of the Court;

  d. has been substantially diminished in value; or

  e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the property described in Paragraph 55 above.

All pursuant to Title 18, United States Code, Section 982(a)(1).

A TRUE BILL

Maria Piccolini
FOREPERSON

SARA MIRON BLOOM
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF MASSACHUSETTS

District of Massachusetts: AUGUST 19, 2021
Returned into the District Court by the Grand Jurors and filed.

/s/ Dawn M. King
DEPUTY CLERK